UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CLAUDIA MULLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21-CV-10797-AK |
| v. ) | |
| ) | |
| SELENE FINANCE LP, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER ON DEFENDANT SELENE FINANCE LP'S MOTION FOR SUMMARY JUDGMENT

**A. KELLEY, D.J.**

Plaintiff Claudia Muller ("Muller") brings this suit against Defendant Selene Finance LP ("Selene"), in connection with Muller's attempt to obtain a loan modification for her mortgage. Muller alleges Selene engaged in unfair and deceptive business practices in violation of Massachusetts General Law ch. 93A, § 9, and breached the implied covenant of good faith and fair dealing. [Dkt. 22 at ¶¶ 59-84]. The case was removed to this Court based on diversity jurisdiction, and the Court granted Muller's request for a preliminary injunction preventing Selene from proceeding with the foreclosure of Muller's home for the pendency of this litigation. [See Dkt. 1 at 3; Dkt. 50]. Pending before the Court is Selene's motion for summary judgment. [Dkt. 69]. Muller filed an opposition to that motion approximately two months after the response deadline. [Dkt. 80]. For the reasons set forth below, Selene's motion for summary judgment [Dkt. 69] is **GRANTED.**

1

I.     BACKGROUND

The factual background is typically drawn from the parties' statements of material facts. However, Muller submitted neither a statement of material facts nor a response to Selene's statement of material facts when filing her opposition to Selene's motion for summary judgment. See Fed. R. Civ. P. 56; Local Rule 56.1 (stating that a party opposing a motion for summary judgment "shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation," and that "all referenced documentation shall be filed as exhibits to the motion or opposition").  The Local Rules of the District of Massachusetts provide that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for the purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." Local Rule 56.1.  This generally requires the Court to consider Selene's material facts undisputed.  However, in the interest of fairness, the Court will consider, as appropriate, Muller's allegations and the exhibits referenced in Muller's opposition to Selene's motion for summary judgment, which were attached to her amended complaint.  See Fed. R. Civ. P. 56(c), (e) (explaining what the courts may do when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact").  As such, the following facts are drawn from Selene's statement of material facts in support of its motion for summary judgment [see Dkt. 70 at 2-7] and Muller's opposition to Selene's motion for summary judgment [see Dkt. 80], including exhibits included with those filings or referenced therein.

**A. Muller's Mortgage and Financial Hardship**

Muller owns a residential property in Malden, Massachusetts. [Dkt. 70-2 at 1, 4]. On June 15, 2007, Muller and Henry Victor ("Victor")[1] signed a promissory note for that residence with Chase Bank USA ("Chase') in the original principal amount of $344,800.00, granting Chase a mortgage on the property for the loan's original principal amount. [See generally Dkt. 70-2]. This mortgage was recorded with the Middlesex County South Registry of Deeds. [Dkt. 70-3 at 15]. In 2018, Muller, then the sole owner of the property, experienced financial hardship when one of her tenants failed to pay rent, and she lost her job as a massage therapist in 2019. [Dkt. 22-2 at 7; Dkt. 70-11 at 2]. Despite opening her own massage therapist business and obtaining reliable tenants in 2019, Muller fell behind on paying her expenses and mortgage. [Id.]

**B. Muller's First Loan Modification Application**

In June 2019, Muller's mortgage was assigned to Wilmington Savings Fund Society ("Wilmington Savings"). [Dkt. 70-4]. Also in June, servicing of the loan transferred to Selene. [Dkt. 70-1 ("Selene Affidavit") at ¶ 7]. On October 8, 2019, Selene, on behalf of Wilmington Savings, sent Muller a "Right to Request Modified Mortgage Loan" notice. [Dkt. 70-5]. This form stated that under Massachusetts law, Muller was qualified to request a modification on her mortgage and had until November 7, 2019, to fill out the corresponding paperwork. [Id. at 1]. Muller failed to return the mortgage modification form and supporting documentation by that deadline. [Selene Affidavit at ¶ 10].

On February 26, 2020, Muller, through an attorney, submitted to Selene a hardship assistance application package for a loan modification. [Dkt. 22-2]. The following month, Selene requested a completed uniform borrower application, an updated profit and loss statement

---

[1] Muller and Victor are now divorced. Victor filed a quitclaim deed to the shared property, giving Muller sole ownership of the property. [Dkt. 70-6 at 73].

3

for the period of January 1, 2020, to March 31, 2020, and respective bank statements for that same time period, providing a due date of April 8, 2020, for Muller to submit the supplementation. [Dkt. 22 at 2; Dkt. 22-3 at 2; Dkt. 70-6 at 50]. On April 8, 2020, Selene acknowledged a facially complete loan modification application. [Dkt. 70-6 at 47]. On May 6, 2020, Selene determined it still needed bank statements with dates of transactions for the entirety of the period from January 1, 2020, through March 31, 2020, to validate Muller's self-employment income. [Id. at 44]. Additionally, Selene noted a discrepancy between the $1,500 income listed on Muller's rental agreement with her tenant and the deposits into her bank account. [Id. at 44]. On July 24, 2020, Selene advised Muller's attorney of this missing information and requested additional documentation. [Id. at 42]. Muller's attorney responded that he would provide this information as soon as possible and that Muller was not depositing income in her bank account. [Id.]. Selene requested that the attorney submit that explanation in writing to not delay the decision on the loan modification request. [Id.]. By September 2, 2020, the requested documentation had yet to be submitted. [Id. at 41]. Consequently, on September 3, 2020, Selene notified Muller that it did not approve her loan modification request, because she failed to return the completed final workout package and supporting documentation. [Dkt. 22-4]. The missing documents included bank statements, a signed borrower application, a divorce decree, profit-and-loss statements, and proof of rental income. [Dkt. 70-8].

    **C. Muller's Second Loan Modification Application**

On October 6, 2020, Muller sent Selene a second application for loan modification [see Dkt. 22-5], but omitted the required 4506-T IRS Form, a signed borrower application, a signed hardship letter, and proof of rental income [see Dkt. 70-8 at 3]. On October 15, 2020, Selene notified Muller of the missing documentation, providing a due date of November 14, 2020, for

the requested materials. [Dkt. 70-9]. Despite this deadline, on November 16, 2020, Selene noted that Muller had failed to return a completed modification application. [Dkt. 70-6 at 32]. The following day, Selene denied Muller's request for a loan modification. [Dkt. 70-10].

### D. Muller's Third Loan Modification Application

Two months later, on January 19, 2021, Muller sent Selene a third application for loan modification. [Dkt. 70-11]. Selene had set a mortgage foreclosure auction for January 20, 2021, but postponed that auction until March 5, 2021, because of this new application. [Selene Affidavit at ¶ 25]. On February 4, 2021, Selene noted that the application was missing several documents or had provided incomplete information, including lease agreements that failed to include lease terms, an undated hardship letter, undated tax documents, undated profit-and-loss statements, and a uniform borrower assistance form that was largely blank. [Dkt. 70-6 at 21-22]. Muller responded to Selene's request for supplemental documents by letter on February 11, 2021 [see Dkt. 70-12] and provided the final remaining documents on March 24, 2021 [see Dkt. 70-13]. In the meantime, the foreclosure auction was postponed until April 21, 2021, and then to May 5, 2021, to accommodate Muller's third application. [Selene Affidavit at ¶ 29; Dkt. 70-15 at 15]. On March 30, 2022, after reviewing Muller's documents, Selene determined that Muller could not afford a modified monthly mortgage payment. [Dkt. 70-14]. Specifically, Selene found that Muller had a 44% front-end debt-to-income ratio, and Pretium, the investor for the loan, provides a target of a 35% or lower front-end debt-to-income ratio. [Selene Affidavit at ¶ 32; Exhibit 22-8 at 37-38].

### E. Muller's Legal Action Against Selene

In October 2021, after some proceedings in state court and removal to this Court, Muller filed the operative first amended complaint, which alleges that Selene engaged in unfair and

deceptive business practices, pursuant to Mass. Gen. Laws c. 93A, § 9, by twice determining her application contained incomplete documentation ("Count I"); Selene breached the implied covenant of good faith and fair dealing by obstructing her loan modification application process ("Count II"); and Selene again engaged in unfair and deceptive business practices, pursuant to Mass. Gen. Laws. ch. 93A, § 9, by determining she had insufficient income for loan modification ("Count III"). [Dkt. 22 at ¶¶ 59-84]. Muller requests declaratory judgment pursuant to Mass Gen. Laws ch. 231A, § 1, and damages for each count in the amount of $83,395[2] plus attorney fees of $5,000. [Id. at 18]. Furthermore, Muller requests $361,294 in consequential damages on Count I, if she should lose her home to foreclosure. [Id.].

## II.  LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment may be granted when the record, viewed in the light most favorable to the non-moving party, presents "no genuine issue of material fact," and the moving party is entitled to judgment as a matter of law. Paul v. Murphy, 948 F.3d 42, 49 (1st Cir. 2020) (citation omitted). The Court must consider (1) whether a factual dispute exists; (2) whether the factual dispute is "genuine," such that a "reasonable fact-finder could return a verdict for the nonmoving party based on the evidence"; and (3) whether a fact genuinely in dispute is material, such that it "might affect the outcome of the suit under the applicable substantive law." Scott v. Sulzer Carbomedics, Inc., 141 F. Supp. 2d 154, 170 (D. Mass. 2001); see also Napier v. F/V DEESIE, Inc., 454 F.3d 61, 66 (1st Cir. 2006). Courts must evaluate "the record and [draw] all reasonable

---

[2] This amount includes Muller's accumulated mortgage arrears, late charges, bank attorney fees, and corporate advance balance fees. [Dkt. 22 at 10].

inferences therefrom in the light most favorable to the non-moving parties." Est. of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010) (citing Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 183–84 (1st Cir. 1999)).  A non-moving party may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Paul, 948 F.3d at 49 (citation omitted).

### III. DISCUSSION

All of Muller's claims require the Court to evaluate whether Selene delayed or obstructed Muller's attempt to obtain a loan modification on her mortgage.  Counts I and III do so within the context of the Massachusetts Consumer Protection Act ("Chapter 93A"), and Count II does so within the context of a contract claim.

#### A. Counts I and III: Chapter 93A

Muller brings two claims against Selene under Chapter 93A: Count I alleges that Selene's denial of Muller's loan modification for "incomplete documentation" was an unfair and deceptive business practice, and Count III claims that Selene's determination that Muller had "insufficient income" to qualify for the requested loan modification was also an unfair and deceptive business practice.  As to Count I, Muller states that the three separate loan modification applications she submitted on February 26, 2020, October 6, 2020, and January 19, 2021, were complete and all contained the same documentation and financial information.  [Dkt. 80 at 2-3].  She argues that she was unfairly and deceptively denied a loan modification by Selene "under the false pretense of 'incomplete documentation'" on the first two applications. [Id. at 2].  As to Count III, Muller claims that Selene unfairly and deceptively denied her third loan modification application on the basis of insufficient income by using a "wildly and intentionally" false figure for her monthly gross income.  [Dkt. 80 at 13].

To succeed on a claim under Chapter 93A, a plaintiff must show that: (1) the defendant engaged in trade or business and committed an unfair or deceptive practice defined by Massachusetts General Law 93A, § 2; (2) this act resulted in economic injury to the plaintiff; and (3) there is a casual connection between the unfair practice and the plaintiff's economic injury. Mass. Gen. Laws. ch. 93A, § 9.  The crucial issue here is the latter half of the first element— whether Selene committed an unfair or deceptive act while reviewing Muller's applications for loan modification.  To determine whether conduct is "unfair" under Chapter 93A, courts consider several factors, including "(1) whether the practice is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Hanrahran v. Specialized Loan Servicing, LLC, 54 F. Supp. 3d 149, 153 (D. Mass. 2014).  Conduct is "deceptive" when it has the "capacity to mislead consumers, acting reasonably under the circumstances, to act differently than they would otherwise would have acted." Id.  Simple errors, negligent acts, and even negligent misrepresentations are not ordinarily actionable under Chapter 93A, unless they are egregious. Aquino v. Pacesetter Adjustment Co., 416 F. Supp. 2d 181, 192 (D. Mass. 2005); see also Brown v. Bank of America, Nat., Ass'n, 67 F. Supp. 3d 508, 516 (D. Mass. 2014) ("To be independently actionable . . . a loan servicer's conduct must be more than mere technical violations and clerical errors").  Indeed, the "few Chapter 93A claims that have survived . . . have alleged a pattern of misrepresentations, failure to correct detrimental errors, and/or dilatory conduct on the part of the servicer and/or bank." Okoye v. Bank of N.Y. Mellon, No. 10-cv-11563-DPW, 2011 WL 3269686, at *9 (D. Mass. July 28, 2011).  As explained below, the

undisputed material facts show that Selene did not act unfairly or deceptively when reviewing and ultimately denying Muller's applications for loan modification.

### 1. Selene's Requests for Supplemental Documentation (Count I)

Muller claims that Selene engaged in unfair and deceptive acts in violation of Chapter 93A by denying Muller's first two loan modification applications on the basis that documents were missing or incomplete when, in fact, Selene knew it had received the required documents, which obstructed and delayed Muller's loan modification. [Dkt. 22 at ¶ 60]. Selene argues that the first and second loan applications were incomplete and, even if they were not, Selene's conclusion that documents were missing or incomplete was, at most, error or mistake, which does not rise to the level of an unfair or deceptive act. [Dkt. 70 at 11]. Courts have found that a servicer's dilatory conduct can sometimes constitute an unfair or deceptive business practice. Examples of dilatory conduct include a servicer telling a mortgagor that certain documents were missing from her application when they were not and a defendant telling a plaintiff to repeatedly resubmit the same papers over the course of several years. See Hannigan v. Bank of America, N.A., 48 F. Supp. 3d 135, 142 (D. Mass. 2014); Moreira v. CitiMortgage, Inc., No. 15-CV-13720-LTS, 2016 WL 4707981, at *3 (D. Mass. Sep. 8, 2016) (finding that requests to supplement an application seven times over a five-month period, in addition to other alleged conduct, suggested intentional dilatory conduct by the loan servicer).

These circumstances do not apply to Muller's case because the evidence shows that she omitted necessary documentation when submitting her first two loan modification applications. Muller's first loan modification application was missing relevant bank statements, a signed borrower application, a divorce decree, a relevant profit-and-loss statement, and adequate proof of rental income. [Dkt. 70-8 at 1-2]. Muller submitted some of the requested supplemental

documents [see Dkt. 22-3], implicitly conceding that the initial application was incomplete, and then failed to submit follow-up materials, including a written explanation as to why the rental income listed in the lease agreement did not match the deposits in Muller's bank account and copies of bank statements through March 31, 2020, as bank statements previously submitted were dated only through March 9, 2020 [see Selene Affidavit at ¶¶ 14-15; Dkt. 22-3 at 8]. Muller's second loan modification application did not include a 4506-T IRS Form, a signed borrower application, a signed hardship letter, or adequate proof of rental income. [Dkt. 70-9]. Muller does not dispute that these specifically requested documents were not initially included in the first and second loan modification application packets, nor does Muller argue that the requested documentation was not necessary to the loan modification application. Instead, Muller makes the cursory argument that her loan modification applications were complete—without specifying the requirements of a loan modification application—citing to one exhibit included with the first amended complaint and claiming that the allegations in the complaint establish that the issues remain "hotly in dispute."[3] [See Dkt. 80 at 1, 5; Dkt. 22-2]. Muller's reference to her complaint is insufficient to create a genuine dispute of material facts at the summary judgment stage, as Federal Rule of Civil Procedure 56(e) "permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except the mere pleadings themselves*." Celotext Corp. v. Catrett, 477 U.S. 317, 324 (1986) (explaining that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims"). Moreover, aside from the fact that such a citation violates the

---

[3] The cases Muller cites in support of her argument also fall short. See Charest v. Federal Nat. Mortg. Ass'n, 9 F. Supp. 3d 114, 126 (D. Mass 2014); Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 354 (D. Mass. 2011); Ayoub v. Citimortgage, Inc., No. 15-CV-13218, 2018 WL 1318919, at *5 (D. Mass. Mar. 14, 2018). Not only do all of these cases address a different procedural posture—motions to dismiss, which evaluate only the pleadings—but they also may be differentiated on the facts.

Local Rules of the District of Massachusetts, as a party opposing a motion for summary judgment must include "a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation," and such referenced documentation "shall be filed as exhibits to the motion or opposition," a review of the cited exhibit shows that the documents requested by Selene were not, in fact, included therein or were missing relevant information.[4] Local Rule 56.1; [see Dkt. 22-2].

Muller has even admitted that she omitted at least one required document in each of her applications. For example, Muller's attorney agreed to send documents missing from the first loan modification application, including rent deposits, when he spoke with one of Selene's representatives. [Dkt. 70-6 at 50; see Dkt. 22-3; Dkt. 80 at 8]. Moreover, Muller does not dispute that the attorney later failed to submit follow-up documentation, including a written explanation as to why the rental income listed in the lease agreement did not match the deposits in Muller's bank account and copies of bank statements through March 31, 2020. [See Selene Affidavit at ¶¶ 14-15; Dkt. 22-3 at 8]. Muller also confirmed during a deposition that the second loan modification application did not include required documents.[5] [Dkt. 70-17 at 3]. This is not a case where the loan servicer intentionally delayed a loan modification. Rather, Selene

---

[4] Muller provides only the first loan modification application, not the second, and the Court therefore cannot independently evaluate the content of the second loan modification application. [See Dkt. 22-2]. Muller's cursory assertion that the second loan modification was complete is insufficient to establish a genuine issue of material fact.

[5] Muller's opposition to Selene's motion for summary judgment makes a frivolous argument about the document used by Selene during the plaintiff's deposition. [See Dkt. 80 at 9-10]. Muller claims that the document used in the deposition, Exhibit E, was an exhibit from the original verified complaint, not the operative amended complaint, and that Selene's questioning was therefore inappropriate. The transcript clearly shows otherwise. [See Dkt. 70-17 at 1-2 (counsel showed the plaintiff Exhibit E, the "financial workout package," attached to the amended complaint)]. Moreover, the opposition acknowledges that Exhibit E of the original verified complaint and Exhibit E of the amended complaint were "identical." [Dkt. 80 at 10].

reasonably requested missing documents essential for its loan modification eligibility determination. It is also clear that throughout this entire process, Selene consistently conferred with Muller's counsel about what documents were missing and had to keep circling back to ensure completion.[6] [See Dkt. 70-6 at 14, 42, 50, 52]. Selene did not act in a deceptive way so as to mislead Muller or her attorney "to act differently than they would otherwise would have acted." See Hanarahan, 54 F. Supp. 3d at 153. Ultimately, therefore, Selene did not engage in any unfair or deceptive business practices by requesting further documentation from Muller when evaluating her first and second loan modification applications. See Aquino, 416 F. Supp. 2d at 192. Selene's motion for summary judgment is granted as to Count I.

### 2. Selene's Determination of "Insufficient Income" (Count III)

In her amended complaint, Muller alleges that Selene's denial of Muller's third loan modification application based on insufficient income "was clearly an intentionally deceptive and unfair act because [Selene] had in fact received verifiable proof of sufficient income for [Muller] to receive a loan modification"[7] [Dkt. 22 at ¶ 80], and she argues that the gross monthly income Selene used to calculate her debt-to-income ratio was "wildly and intentionally inaccurate" [Dkt. 80 at 13]. Selene counters that Muller, at most, alleges that Selene's

---

[6] Muller's complaints that Selene did not provide a list of the exact documents deemed missing in its second denial letter and that Selene scheduled a foreclosure during the time provided to Muller to gather the missing documents do not, even when taken together, qualify as unfair or deceptive business practices. [See Dkt. 22 at ¶ 63; Dkt. 80 at 5]. Selene provided Muller details about the missing documentation prior to issuing the denial letters for the first and second loan modification applications. Moreover, Selene's notice informing Muller of the incomplete application and requesting further documentation expressly provides that "the foreclosure process may continue in accordance with applicable law while an application remains incomplete." [Dkt. 70-9 at 1].

[7] Muller also briefly alleges that Selene violated Chapter 93A by not providing a reasonable offer of settlement upon receipt of Muller's demand letter on May 10, 2022 [Dkt. 22 at ¶ 81], but this does not create Chapter 93A liability, see Dawe v. Capital One Bank, No. 04-40192-FDA, 2007 WL 3332810, at *1 n.2 (D. Mass. Oct. 24, 2007) ("[A] failure to respond or an inadequate response to a demand letter is not itself a violation of Chapter 93A.").

calculation was an error, which is not a deceptive or unfair action as required under Chapter 93A. [Dkt. 70 at ¶ 40]. Selene's argument prevails.

As an initial matter, Muller provides no facts to support this claim and therefore fails to establish a genuine issue of material fact that would survive summary judgment. Like the previous Chapter 93A claim, Muller relies on the bare bones "factual allegations" in her complaint to dispute Selene's income calculations. [See Dkt. 80 at 13]. But allegations are just that, see Allegation, Black's Law Dictionary (11th ed. 2019) (defining "allegation" as a "declaration that something is true," especially, "a statement, *not yet proven*, that someone has done something wrong or illegal" (emphasis added)), and more than a plaintiff's pleading is required to survive summary judgment, see DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (explaining that "[i]f the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," then "summary judgment may be appropriate"). Muller has not explained how Selene's calculations were inaccurate, beyond mere speculation, nor has Muller pointed to any facts supporting the inference that Selene's calculations were not only inaccurate but also unfair or deceptive. In contrast, Selene provides the basis for its income calculation, the default interest rate, and the total debt, and explains the debt-to-income ratio used. [See Dkt. 70 at ¶ 32; Dkt. 70-16 at 2]. Muller's unsupported claim that such calculations are not correct is simply insufficient to create a genuine issue of material fact worthy of trial. See Mesnick, 950 F. 2d at 822.

Even assuming Selene made a mistake in calculating Muller's income, courts have consistently rejected Chapter 93A claims based solely on allegedly wrongful loan modification denials. See, e.g., Kozaryn v. Ocwen Loan Servicing, LLC, 784 F. Supp. 2d 100, 103 (D. Mass. 2011) (finding that loan modification denial does not constitute a Chapter 93A violation

"[w]ithout further factual detail demonstrating unfairness, as opposed to clerical error or mere negligence"). Courts have not found conduct to be unfair or deceptive even where the loan servicing company's calculations for loan modification were egregiously wrong. See Saade v. Pennymac Loan Servs., LLC, No. 15-cv-12275-IT, 2016 WL 4582083, at *2 (D. Mass. Aug. 31, 2016) (finding that the plaintiff failed to state a Chapter 93A claim even though he alleged that the loan servicer denied the mortgagor's modification based on incorrect monthly payments under the mortgage, misstated monthly payments, and an incorrect interest rate, because he failed to allege that the defendant's conduct "was unfair as opposed to the result of mistakes or technical errors"), adopted 2016 WL 6089684 (D. Mass. Oct. 17, 2016); see also Squizzero v. U.S. Bank Nat'l Ass'n, No. 17-cv-10368-ADB, 2018 WL 3651351 (D. Mass. Aug. 1, 2018) (finding that a loan servicer's failure to accept the mortgagor's partial payments on her default was not an unfair or deceptive practice in their denial for modification). Regardless of whether Selene wrongfully calculated the denial based on Muller's financial documents, such error does not amount to deception and is insufficient to create liability under Chapter 93A. Selene's motion for summary judgment is granted as to Count III.

### B. Count II: The Implied Covenant of Good Faith and Fair Dealing

Muller also claims Selene breached the implied covenant of good faith and fair dealing by unreasonably and intentionally delaying her loan modification, continuously requesting documents which had already been received, and failing to respond to her Chapter 93A demand letter with a reasonable offer of settlement required by the statute. [Dkt. 22 at ¶ 70]. Because the relationship between loan servicers and mortgagors is not contractual, this claim cannot survive summary judgment.

The implied covenant of good faith and fair dealing provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991). In Massachusetts, this covenant applies to all valid contracts. Id. Thus, a plaintiff first "must show that there existed an enforceable contract between the two parties" to establish a breach of the implied convent of good faith and fair dealing. Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 226 (D. Mass. 2005) (citation omitted); see Dill v. Am. Home Mortg. Servicing, Inc., 935 F. Supp. 2d 299, 303 (D. Mass. 2013) ("[W]ithout a contract, there is no covenant to be breached."). Muller does not dispute that Selene is merely the loan servicer, and not the assignee of the mortgage, which is Wilmington Savings. [Dkt. 70-4]. As such, there is no valid contract between Muller and Selene. See In re Jackson, 622 BR 321, 331 (Bankr. E.D. Mass. 2020) ("Courts have consistently held that there is no contractual privity between a borrower and a loan servicer with respect to a note and mortgage, and, therefore, the borrower cannot prevail against the servicer on a breach of contract claim.") (collecting cases).

Even assuming there is a contractual obligation between Muller and Selene, Selene's denials of Muller's loan modification applications do not amount to a breach of the implied covenant of good faith and fair dealing. Absent an explicit provision in the mortgage contract, "there is no duty to negotiate for loan modification once a mortgagor defaults," and the implied covenant of good faith and fair dealing "cannot 'create rights and duties not otherwise provided for in the existing contractual relationship.'" Mackenzie v. Flagstar Bank, FSB, 738 F.3d 486 (1st Cir. 2013) (citation omitted). Nothing in Muller's mortgage imposes a duty on Wilmington Savings or Selene to consider a loan modification prior to foreclosure in the event of a default. See id. In fact, the mortgage explicitly states that the lender is required only to give notice to the

15

borrower of its acceleration, including foreclosure, for any borrower breach and to allow thirty days prior to foreclosure to cure the default. [Dkt. 70-3 at 13]. Muller does not bring a claim on that basis, and it would "be an error to extend the implied covenant to encompass a duty to modify (or consider modifying) the loan prior to foreclosure, where no such obligation exists in the mortgage." Mackenzie, 738 F.3d at 493. Additionally, as already explained, Muller has not shown a genuine issue of material fact as to whether Selene acted in good faith. See Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 238 (1st Cir. 2013) (explaining that the plaintiff must present "evidence of bad faith or an absence of good faith," which "carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will," to prevail on a claim for breach of the implied covenant of good faith and fair dealing). The Court therefore grants Selene's motion for summary judgment as to Count II.

### IV.     CONCLUSION

For the foregoing reasons, Selene's motion for summary judgment [Dkt. 69] is **GRANTED**. Accordingly, the preliminary injunction previously entered by the Court [Dkt. 50] is **VACATED**.

**SO ORDERED.**

Dated: January 31, 2023                                     /s/ Angel Kelley
                                                                                        Hon. Angel Kelley
                                                                                        United States District Judge